## GULF, COLORADO AND SANTA FE R'Y CO. V. JAMES S. GREENLEE ET UX.

### IN SUPREME COURT, TYLER TERM, 1884.

*Railroad Crossing.*—Where a railroad crosses a public highway, the statute imposes upon the company the obligation to restore the highway either to its former state, or to such a condition as not to unnecessarily impair its usefulness, and also to keep the crossing in good·repair.

*Same—Highway.*—No obligation rests upon a railroad company to repair public highways, except when they haue been interfered with by the construction of the railroad, and the obligation is limited by the above rule.

*Measure of Damages.*—Compensation for the injury is the legal rule for the measure of damages—the amount to be estimated by the jury, upon the evidence, by the exercise of a reasonable and just judgment.

*Cnarge.*—See opinion for charges held erroneous under above rules.

Appeal from Bosque county.

#### STATEMENT

Suit by husband and wife in behalf of the latter, for personal injuries from alleged negligence of appellant and its servants.

On the afternoon of September 29, 1881, appellees, with their five children, were traveling in a southerly direction from the town of Meridian, Bosque county, to Comanche Springs, McLennan county, in a covered wagon drawn by a yoke of oxen, along the public high· way leading from Meridian to the town of Clifton. This highway and the defendant's railway crossed each other about four miles south of Meridian ; and, as the plaintiff's wagon and team were approaching this crossing, and after the latter had drawn very near thereto,

a south-bound freight train of the defendant operated by its servants, passed the point of intersection of the two roads, when the plaintiffs' oxen turned suddenly and sharply to one side, upsetting the wagon and casting Mrs. Greenlee upon the ground, inflicting upon her bodily injuries. Mrs. Greenlee and her husband brought this suit against the defendant to recover, in her behalf, twenty-thousand dollars actual or compensatory damages, and ten thousand dollars examplary damages for the injuries received by her.

The amended original petition contains two counts. The grounds of action in the first count are, that the defendant had negligently placed, at and near the intersection of its railway with said highway, heaps of earth and other obstructions to the view of a traveller approaching said intersection along said highway; that in constructing its said railway across said highway, the defendant had, by embankments and excavations, altered the condition of said highway at said point of intersection, rendering it and the approaches thereto unsafe to travelers in vehicles, and had negligently failed to restore it to its proper condition, or to erect at or near said point any sign to give notice of the proximity of its said railway, and warn persons of the necessity of looking out for the cars ; that as the said plaintiffs, unconscious of the approach or proximity of any train, were approaching said intersection in a wagon drawn by oxen, along said highway, and were about to cross said railway at said intersection, a locomotive operated by said defendant's servants and drawing a train of cars of defendant, by and through defendant's negligence, without blowing any whistle or ringing any bell, ran on said railway across said highway at a great rate of speed, and, without any fault or negligence on the part of plaintiffs, struck said wagon and team with great violence, knocking down said team and overturning said wagon, thereby violently throwing said Lou M. Greenlee upon the ground and inflicting great and serious injuries upon her shoulder, hip and spine, from which she was confined to her bed for many months ; and the defendant's servants, after they had discovered plaintiffs, maliciously and with gross negligence, continued said train at its former speed, and made no effort to stop the same. The second count differs from the first only in this, that, instead of a collision between defendant's train and the plaintiff' wagon team, as is alleged in the first count, in the second count the allegation is, that as the plaintiffs were approaching said intersection in their said

wagon, on a down grade, and when the heads of their oxen were near the rails, the said locomotive and train of cars, through negligence and carelessness of the defendant, were run at a great rate of speed along said railway and across said highway, and the proximity of said engine and cars to the heads of said oxen, and the noise and motion thereof, so frightened said oxen, that they suddenly turned around and upset said wagon, thereby violently throwing said Lou M. Greenlee upon the ground, and inflicting great and serious injuries upon her shoulder, hip and spine, etc.

To plaintiffs' petition the defendant pleaded :

1–General demurrer. 2–Special demurrers to so much of the first and second counts of said petition as sought to recover of defendant exemplary demages. 3—The general issue. 4—That the injuries complained of were caused by the negligence and improper conduct of the plaintiffs and not otherwise. 5—That the alleged injuries to Lou M. Greenlee, if, in fact, any hurt or injury had happened to her, were caused by the said plaintiffs' improper management of their said team and the unruliness of said team as they were approaching said crossing, and without any default of defendant or its servants. 6—Contributory negligence on the part of the plaintiffs.

At the January term, 1883, the court overruled the defendant's general demurrer, but it sustained its special demurrers to plaintiffs' claim in the first and second counts of their amended original petition for exemplary damages. The cause was tried by a jury, who returned a verdict for the plaintiffs for fifteen thousand dollars ; and on this verdict the court rendered judgment. The defendant made a motion for a new trial, which was overruled by the court, and thereupon the defendant excepted, gave notice of appeal, assigned errors, and has brought the case to this court by appeal.

### OPINION.

Where a railroad intersects or crosses a public highway, the statute imposes upon the company the obligation to restore the highway either to its former state, or to such condition as not to unnecesrarily impair its usefulness, and also to keep the crossing in good repair.

If, therefore, after constructing a railroad across a public highway, the company restores it to such condition as not to unnecessarily im-

pair its usefulness as a highway, and keeps the crossing in good repair, the company will then have discharged the duty imposed by the statute.

Upon this branch of the case the court instructed the jury as follows:

"The law of this state requires railway companies to keep in good repair all crossings of public highways and the approaches thereto. * * * If you believe from the evidence that the plaintiff, Lou M. Greenlee, was injured as alleged in the petition, and that such injury resulted from a collision of plaintiffs' wagon with the defendant's train; that is, that said collision was caused by the neglect of defendant's employes, * * * to keep said crossing in good repair, as required by law, and that the plaintiff's were in no way themselves guilty of negligence in approaching said crossing, then, if you sn believe, you will find for plaintiffs. * * * Or, if you believe from the evidence that there was no collision between the plaintiffs' wagon and the defendant's cars, but believe from the evidence that the plaintiffs' approach to said crossing was made with ordinary care, caution and prudence, and that by reason of the negligence of defendant's employes, * * * to keep said crossing and the approaches thereto in good repair, as required by law, the plaintiffs' oxen came in such close proximity to the railroad before the approaching train was discovered as to cause said oxen to take fright and overturn the plaintiffs' wagon, and that thereby the said Mrs. Lou M. Greenlee was injured as alleged, you will, if you so believe, find for the plaintiffs."

That instruction the appellant claims is erroneous and misleading, as there was no evidence tending to show that the condition of the crossing contributed to the accident. All the evidence as to the condition of the crossing and its approaches is found in the testimony of James S. Greenlee, J. N. Parks and W. B. Williams. It was admitted that the highway upon which appellees were traveling at the time of the accident was a second-class public road. Greenlee says that in the direction he was traveling before reaching the railroad the highway goes down a hill, where for some distance it is tolerably steep. but nearer the railroad the descent is not so abrupt. Williams makes about the same statement. Parks says he thinks the descent next to the railroad is perhaps a little more abrupt now than it was before the railroad was constructed, on account of some

dirt they threw upon the road. None of the witnesses state that the highway had been so impaired by the construction of the railroad as to interfere with its usefulness, nor is there any testimony tending to show that such a result followed the construction of the railroad. There is no evidence as to the condition of the crossing proper.

It should be observed that by the instruction stress is laid upon the duty of the company to keep the approaches to the crossing in good repair. In fact, the same obligation is imposed with respect to the approaches as the crossing, while the statutory requirement is to place the highway in such condition " as not to unnecessarily impair its usefulness." And while it does not eo nomine mention approaches to the crossing, nevertheless it intends that when they have been materially interfered with by the construction, then the duty rests upon the company to place them in such condition as not to materially impair the highway.

Here the trouble arises as to the meaning of the term "approaches" as used in the instruction, and as to what the jury understood it to include. It seems that at the point of intersection the railway and the highway were upon a level with each other. Then, it is not true that the company would be under obligations to change the highway so as to avoid the hill, about the descent of which the appellee complained, or to so grade the hill as to place the highway in a better condition than it was before the construction of the railroad. The utmost limit of the statutory requirement is that the highway shall be restored to its former state, or else to such condition as not unnecessarily to impair its usefulness. None of the witnesses say that the highway was left in such condition as to thus impair its usefulness, nor is there any evidence from which such a deduction could be made. Parks says that the descent nearest the crossing has, perhaps, been rendered a little more abrupt by the dirt which had been thrown upon it, but as to whether the dirt of which he speaks was placed there as a matter of convenience to those who constructed the railroad, or for the purpose of remedying some defect in the highway, is not made to appear—nor does it appear that the dirt to which he refers in any way impairs the usefulness of the highway. Greenlee complains of the first descent, which he claims was at an angle of about forty-five degrees; this was as he came down the hill, some distance from the crossing.

Surely under the state of the case presented by the record, no one

would insist that the company was under any legal obligation to grade the hill over which the highway passed in approaching the point of intersection; and yet, from the instruction the jury might, and probably did, so understand the rule of law to be applied to the facts of the case. There is no legal obligation resting upon railroad companies to repair the public highways of the country, except when they have been interfered with by the construction of the railroad, and then the obligation is limited as heretofore shown.

Where an erroneous charge as applied to the case as made by the evidence is in its nature calculated to mislead the jury, and it is not made to appear that such was not its effect, the judgment will be reversed. Although a charge may be correct as applied to a particular branch of the case, still if it is calculated to mislead the jury, and it does not appear from the record that no injury resulted, it will be deemed erroneous and cause for reversal. (Spence v. Oustott, 3 Texas, 147; II., E. & W. T. Railroad Company v. Hardy, 61 Texas, 230.)

While the appellate court will indulge the presumption that the verdict and judgment are right, yet when it is apparent that the charge upon a vital issue is erroneous, it yields to the contrary presumption, that the verdict which might be founded upon an erroneous charge is itself vicious. In such case the duty does not devolve upon the party complaining to show that he was thereby injured, but upon the one in whose favor it was returned to show that the complaining party was not prejudiced by the error.

After a careful examination of the record, we conclude that the jury may have been mislead by the instruction to appellant's prejudice.

Other questions are presented by the assignment of errors which, in view of another trial, may with propriety be briefly considered. While the statute imposes upon the company the duty of placing signs at points where public highways cross the railroad, still it is well settled that if the party injured ascertained or knew the point of intersection in time to avoid injury from passing trains by the exercise of reasonable care and prudence, then the failure to place the sign as required would not give a right of action for injuries received from other causes. Upon that point there is seeming confusion in the statements of Greenlee. He says he recognized, or rather identified, the point of intersection when he was still distant

one or two hundred yards from the crossing and while he was yet upon the hill. From that point all the witnesses concur that the railroad was in plain view toward the north for about three-fourths of a mile, and that approaching trains may be seen for that distance without any interposing obstruction. Now, after recognizing or identifying the point of intersection, if he could, by the exercise of reasonable have care avoided the injury, then the failure to erect the sign would not be held to have contributed to the injury. The object of requiring the sign is to point out to and inform the traveler upon the highway of the point of intersection, so that by the exercise of reasonable care he may avoid injury from passing trains. But where it is made to appear that he knew of the place of crossing in time to avoid injury by the exercise of reasonable care, the statutory requirement would have no application.

In another portion of the evidence Greenlee says that he did not see the crossing until he was within thirty or forty yards of it, when it was too late to avoid the injury. If by these statements the witness meant that while upon the hill he ascertained or identified the crossing, but in fact did not see the very crossing until he was within thirty or forty yards of it, then the latter statement would be no qualification of the former. For if the sign had been erected as required, while it would have enabled him to have identified the place of intersection, yet it is not perceived how that would have enabled him to have seen the actual crossing any sooner than he did, as it appears that the crossing cannot be seen until the embankment near it has been passed. However, if the witness meant by the latter to qualify or correct the former statement, and in fact did not identify the place of crossing until he was in thirty or forty yards of it, and when by the exercise of reasonable care he could not have avoided the injury, then the failure to erect the sign might become material.

As remarked in the case of Houston & Texas Central Railway Co. v. Wilson. "Persons approaching such crossings should exercise due care to ascertain whether there are trains approaching so as to render passing the track hazardous. The criterion furnished by the law for ascertaining the measure of such care is that which would be exercised by a reasonably cautious and prudent person under like circumstances."

Abstractly considered, the charge to the effect that the law furn-

ishes no rule for the measure of damages in this case is erroneous.
Compensation for the injury is the legal rule for the measure of
damages. True, the law does not furnish the rules for computation
in dollars and cents as in some other class of cases, still the rule is
as imperative as if it did, for the jury cannot rightfully allow any-
thing beyond compensation which is to be estimated upon the evi-
dence by the exercise of a reasonable and just judgment. The dif-
ficulty arises in the particular application of the rule on account of
the uncertainty with respect to the subject matter, but in a faithful
discharge of duty the jury, after a careful consideration of the evi-
dence and in the exercise of a just judgment, can but weigh out to
the injured party what that judgment shall dictate as an exact equiv-
alent for the injury inflicted. It was never contemplated that the
jury should award the amount which it might desire the injured
party to have, for that would result in substituting caprice or
personal preference for sound, unbiased judgment exercised
under the solemn sanction of an oath. From the nature of the case
the appellate court can only grant relief on the ground of excessive
verdict when it is so disproportionate to the injury inflicted as to
evidence a wrong motive upon the part of the jury in making the
estimate. That being true, it is the more important that juries
should exercise a cautious and deliberate judgment in passing upon
the evidence and in awarding compensation to the injured party, as
there seems to be some indisposition on the part of trial courts to
grant new trials in such cases.

In this character of case every particular and phase of the injury
ought to enter into the consideration of the jury, such as whether
the injury is permanent or transitory, its effect upon the physical
system, whether in its nature calculated to produce death or grave
apprehensions of death, diminished ability to earn money by the
usual avocation of the party, pain and suffering, including mental
anguish, and expenses occasioned by the injury. In support of either
of these elements evidence is admissible, and it is encumbent upon
the party seeking redress, so far as the nature of the case admits and
within reasonable limits, to fully enlighten the jury by evidence as
to each element of damage claimed. It may be remarked, however,
that the court measurably cured the defect about which the com-
plaint is made, by telling the jury to find such amount as it thought
would be compensation. Under the circumstances of this case, it is

quite clear that Mrs. Greenlee might well rely upon the prudence and caution of her husband in making the approach to, as well as crossing the railroad. The correlative of the proposition is also true, that she would be bound by his negligence or want of due care.

The judgment is reversed and the cause remanded.

Watts, J.